# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GEORGE DESALES MORSE,

    Petitioner,

vs.

WARDEN PALMER, et al.,

    Respondents.

Case No. 3:12-cv-00038-HDM-WGC

**ORDER**

Before the court are the first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, respondents' answer (#23), and petitioner's reply (#28). The court determines that relief is not warranted, and the court denies the petition.

After a jury trial in state district court, petitioner was convicted of two counts of sexual assault with a minor under the age of 14 and one count of lewdness with a child under the age of 14; the child was 3 years old. Two more counts of lewdness with a child under the age of 14 were dismissed. Ex. 31 (#18). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 38 (#18).

Petitioner then commenced this action. The court appointed counsel, who filed the first amended petition.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

Ground 1 is a claim that the admission of petitioner's statements to police violated the Fifth and Fourteenth Amendments because the warnings given pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), were ineffective in petitioner's case. After petitioner was arrested, he was driven to the police station. Along the way, petitioner and the detective driving the car started conversing. The

detective turned on a voice recorder. Petitioner made several incriminating statements without having been given the Miranda warnings. Then, at the police station, the detective gave petitioner the Miranda warnings, and petitioner gave a full statement.

Before trial, petitioner moved to suppress both his statement in the car and his statement at the police station. Ex. 12 (#16). In particular, petitioner argued that the statement at the police station was the product of a question-first, then-warn strategy that reduced the effect of the Miranda warnings. See Missouri v. Seibert, 542 U.S. 600 (2004). The state district court suppressed petitioner's statements in the car because they were the product of an unwarned custodial interrogation. The state district court did not suppress petitioner's statements made at the police station. Ex 23 (#17). Petitioner raised the issue of the police-station interrogation on direct appeal, and the Nevada Supreme Court held:

> Third, Morse asserts that the district court erred when it admitted evidence of his confession. A detective transported Morse from his house to the police station. En route, Morse made various inculpatory statements, which the detective recorded. At the station, the detective read Morse his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and Morse confessed. The district court suppressed the statements that Morse made in the vehicle, but admitted the Mirandized station interview. On appeal, Morse cites Missouri v. Seibert, 542 U.S. 600 (2004), in support of his contention that the failure to give Miranda warnings before the first custodial interrogation requires suppression of the second. We disagree. The discussion in the vehicle was informal, conversational, and frequently veered away from the topic of Morse's "mistake." Upon entering the more formal setting of the interview room, Morse would have faced a genuine choice about whether to continue speaking or invoke his right to silence. We therefore conclude that the Miranda warnings that preceded the interview were effective. See Seibert, 542 U.S. at 614-15; Oregon v. Elstad, 470 U.S. 298, 311-14 (1985). Accordingly, the district court did not err in admitting this evidence.

Ex. 38, at 3-4 (#19).

The plurality opinion in Seibert laid out four factors to consider when an unwarned custodial interrogation might make a subsequent, warned custodial interrogation inadmissible:

> "[1] the completeness and detail of the questions and answers in the first round of interrogation, [2] the overlapping content of the two statements, [3] the timing and setting of the first and the second, the continuity of police personnel, and [4] the degree to which the interrogator's questions treated the second round as continuous with the first."

Seibert, 542 U.S. at 615. In Seibert, the first and second interrogations occurred in the same room in the police station. The interrogator made a conscious decision not to give Seibert the Miranda warnings. In the first round, the interrogator repeatedly tried to get Seibert to admit that the victim

-3-

always was intended to die in an intentionally set fire.  Only after Seibert admitted that fact did the first interrogation stop.  Twenty minutes later, the same officer started the second round of interrogation with the Miranda warnings.  The interrogator questioned Seibert about the same facts.  When Seibert gave an answer different from an answer that she gave in the first round, the interrogator would continue questioning until Seibert admitted what she had said in the first round.  The plurality noted that the question-first approach would minimize the effectiveness of the Miranda warnings:

> After all, the reason that question-first is catching on is as obvious as its manifest purpose, which is to get a confession the suspect would not make if he understood his rights at the outset; the sensible underlying assumption is that with one confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble.  Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again.

Seibert, 542 U.S. at 613.

The Nevada Supreme Court reasonably could have concluded that the Miranda warnings were effective for petitioner's second interrogation.  The interrogation in the police car did not go into much detail about the crime.  Petitioner admitted that he made a mistake and that he was a molester, but he did not describe any details.  He referred to a conversation with his wife and his apology to her.  The detective stated that she did not think petitioner was a monster.  The interrogation in the police station went into much greater detail about petitioner's acts.  The only overlaps between petitioner's statement in the police car and statement in the police station are the petitioner's conversation with, and apology to, his wife.  The transcript of the police-car interrogation lacks any indication of when it occurred; petitioner has attached a copy of the property report to that transcript.  The quality of the copy is so low that if it indicates when petitioner arrived at the police station, the court cannot read it.  The court will assume that the second interrogation at the police station started soon after petitioner arrived there.  Even though the transcript of the police-car interrogation showed that it concluded when petitioner arrived at the police station, the incriminating part of the interrogation ended quite some time earlier; the detective and petitioner spent the rest of the time in the car reminiscing about their experiences in the armed forces and afterward.  In the interrogation in the police station, the detective asked again about petitioner's

conversation with his wife, and the detective noted that she said in the car that she did not think that petitioner was a monster, but that was the extent of treating the police-station interrogation as continuous with the interrogation in the car. Given these differences in facts between Seibert and this case, the Nevada Supreme Court reasonably could have concluded that petitioner received a valid Miranda warning and executed a valid waiver of those rights.

Reasonable jurists might find this conclusion to be debatable, and the court will issue a certificate of appealability on this ground.

Ground 2 is a claim that petitioner's rights under the Confrontation Clause of the Sixth Amendment were violated when hearsay statements of the victim were admitted into evidence. The Sixth Amendment requires that when the state seeks to introduce testimonial statements given out of court, the declarant must be unavailable to testify and a prior opportunity for cross-examination must have existed. Crawford v. Washington, 541 U.S. 36 (2004). The Confrontation Clause does not apply to all hearsay; it is limited to testimonial statements. Davis v. Washington, 547 U.S. 813, 823-26 (2006). Crawford left open the definition of "testimonial," but prior testimony at a preliminary hearing, prior testimony before a grand jury, and statements given to police at interrogations are testimonial. 541 U.S. at 68. Later, the Supreme Court clarified what it meant by testimonial statements given to police:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis, 547 U.S. at 822. The Supreme Court left open the question whether a statement to anyone other than law enforcement, let alone a private actor, could be testimonial. Id. at 823 n.2.

The victim herself did not testify. On appeal, this question was intertwined with the question whether the girl's statements were admissible hearsay under state law. The Nevada Supreme Court held:

> First, Morse claims that the district court erred in admitting out-of-court statements of the child victim. We agree, but conclude that the error is harmless. The three-year-old victim, who was also Morse's step-granddaughter, related the abuse to family members on the day it

> occurred and to a police detective soon thereafter. The State gave Morse notice that it would be using these statements at trial and the district court held a hearing to determine their admissibility under NRS 51.385. At the hearing, the State declared that it would call the victim to testify at trial only if the district court did not admit her out-of-court statements. [Footnote 1: Upon finding the victim's hearsay statements admissible, the district court did not proceed with a scheduled hearing to determine whether the victim was competent to testify. We reject Morse's contention that a district court must determine a child declarant's competency before it admits the declarant's hearsay statement, as considerations regarding the ability of the child to relate information truthfully necessarily overlap with the factors to be considered when assessing the reliability of the hearsay statement. Compare Wilson v. State, 96 Nev. 422, 423, 610 P.2d 184, 185 (1980), with NRS 51.385(2).] The district court determined that each of the statements to family members was sufficiently reliable and admitted them, but excluded the victim's statement to the detective. Our review of the record leads us to conclude that the district court did not abuse its discretion in its reliability determination. See Pantano v. State, 122 Nev. 782, 790-91, 138 P.3d 477, 482-83 (2006).
>
> However, the court not only failed to find that the victim was "unavailable or unable to testify" at trial, NRS 51.385(1)(b), but it seemed to accept the prosecutor's assertion that she would choose whether to call the witness based upon the court's ruling on the victim's hearsay statements. This was error. See Felix v. State, 109 Nev. 151, 189, 849 P.2d 220, 246 (1993) (noting that unavailability finding "should be made carefully and based on substantial evidence"). Nonetheless, the error was harmless. The admitted statements were nontestimonial and therefore did not implicate Morse's Confrontation rights. See Crawford v. Washington, 541 U.S. 36, 61 (2004); see also Pantano, 122 Nev. at 791, 138 P.3d at 483 (concluding that statements of child victim to parents were nontestimonial). Additionally, the victim's statements were reliable to a degree that "cross-examination would add little," Felix, 109 Nev. at 181, 849 P.2d at 241; NRS 51.075(1), and substantial evidence beyond these statements—including Morse's statement's admitting to acts supporting each count charged—supports the convictions.

Ex. 38, at 1-2 (#19). Much of the Nevada Supreme Court's discussion concerns state law and is not addressable in federal habeas corpus. For a violation of the Confrontation Clause to have occurred, the victim's statements must have been testimonial, the victim must have been unavailable to testify, and petitioner must have had a prior opportunity to cross-examine the victim. The Nevada Supreme Court determined that the victim's statements to her parents are not testimonial. That could not have been an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, because the Court has explicitly stated that it has not answered the question whether a statement to someone other than law enforcement is testimonial. Davis, 547 U.S. at 823 n.2; Carey v. Musladin, 549 U.S. 70, 77 (2006). Petitioner cites to decisions of the federal courts of appeals for the proposition that statements to people other than law enforcement can be testimonial for the purposes of the Confrontation Clause. However, all those decisions are appeals from judgments of conviction of federal courts. The courts of appeals have not considered the deferential standard of review of 28 U.S.C. § 2254(d).

The Nevada Supreme Court's determination that the victim's statements were not testimonial ends the Confrontation-Clause analysis. The remaining issues—competence, availability, and whether the factual findings were reasonable—all are issues of state law and outside the scope of federal habeas corpus.

Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 2.

Ground 3 is a claim that petitioner's sentence is cruel and unusual in violation of the Eighth Amendment. The Eighth Amendment prohibits grossly disproportionate sentences. Lockyer v. Andrade, 538 U.S. 63, 71-73 (2003) (citing Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983); Rummel v. Estelle, 445 U.S. 263 (1980)). Nevada has developed the same principle. Lloyd v. State, 576 P.2d 740, 742 (1978). Petitioner was 79 years old at the time of the crime. The state district court imposed concurrent sentences on all three counts. The longest sentence is life imprisonment with parole eligibility starting after 35 years.[1] Petitioner would be 114 years old when he becomes eligible for parole, and likely he will die in prison. On direct appeal, the Nevada Supreme Court held:

> Fourth, Morse claims that, given his age, lack of prior criminal history, and service to his country in the Korean War, his sentence constitutes cruel and unusual punishment. Morse does not argue that the sentencing statutes are unconstitutional and we conclude that the sentence imposed is not grossly disproportionate to the crime; therefore, it is constitutionally valid. See Allred v. State, 120 Nev. 410, 420, 92 P.3d 1246, 1253 (2004).

Ex. 38, at 4 (#19). The rule regarding the proportionality of a sentence is about as general as possible. "A gross disproportionality principle is applicable to sentences for terms of years." Andrade, 538 U.S. at 72. "[T]he precise contours of [it] are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73. Andrade was a repeat offender, and he received

---

[1] Before this case went to trial, the prosecution and petitioner negotiated a plea agreement for petitioner to plead guilty to one count of attempted lewdness with a child under the age of 14. The crime would have carried a maximum prison term of not more than 20 years, and a minimum prison term of not less than 2 years. The prosecution agreed to cap the maximum term at 15 years. Ex. 6 (#15). Under Nevada's sentencing rule, when the maximum term is 15 years, the minimum term cannot be more than 6 years. See Nev. Rev. Stat. § 193.130(1). Petitioner then would have been eligible for parole, provided that he could have satisfied the mental-health evaluations imposed upon sexual offenders. Petitioner changed his mind and decided to go to trial. Ex. 5 (#15). The prosecution reinstated the original charges. Ex. 7 (#15).

consecutive sentences of life imprisonment with the possibility of parole for two separate thefts of videotapes. The Supreme Court held that the California Supreme Court applied the principle reasonably when holding that the sentences were not grossly disproportionate. In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court held that Ewing's repeat-offender sentence of life imprisonment with the possibility of parole for the theft of three golf clubs totaling $1,200 in value was not grossly disproportionate.[2] If sentences of life imprisonment with the possibility of parole for theft, albeit by repeat offenders, are not grossly disproportionate, then the Nevada Supreme Court could not have applied the principle unreasonably when it determined that petitioner's sentence for a much more serious crime met the standard.

Reasonable jurists might find this conclusion to be debatable, and the court will grant a certificate of appealability on ground 3.

In ground 4, petitioner argues that the prosecution withheld potentially exculpatory or impeaching evidence from him. In its discussion of the matter, the Nevada Supreme Court summarized what happened:

> Second, Morse contends that the State committed reversible error when it violated Brady v. Maryland, 373 U.S. 83 (1963). A police detective disclosed during her testimony that the victim had been sent for a sexual assault examination, a fact unknown to both the prosecution and the defense. The report produced from that examination disclosed that the victim had no physical signs of abuse. After Morse moved for a mistrial, the district court found that because the type of assault alleged would not result in physical findings, Morse was not prejudiced by not having the report earlier. On appeal, Morse claims that a report that found no signs of abuse would be exculpatory and that, because the report also stated that the three-year-old victim was "advanced for her age," it would have been favorable evidence that bolstered Morse's defense that the child initiated the sexual contact and Mores was only passively compliant with the child's advances. We are unpersuaded that there is a reasonable probability that the outcome of Morse's trial would have been different if this information were before the jury, see Jiminez v. State, 112 Nev. 610, 619, 918 P.2d 687, 693 (1996), and conclude that the district court did not err in denying Morse's mistrial motion.

Ex. 38, at 3 (#19). "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice

---

[2]Ewing came to the Supreme Court after the conclusion of direct review in the state courts, not through a habeas corpus petition in federal courts, and thus the deferential standard of review in § 2254(d)(1) did not apply.

must have ensued." Strickler v. Greene, 527 U.S. 263, 281-282 (1999). On the first element, the Nevada Supreme Court reasonably could have concluded that the report was neither exculpatory nor impeaching. The report shows no physical injuries, but the acts that petitioner described in his statement would not have caused any physical injuries to the victim. See Ex. 46 (petitioner's statement), Ex. 47 (patient assessment), Ex. 48 (patient assessment). Regarding the second element, the report was disclosed to petitioner, but in the middle of the trial. The Supreme Court of the United States has never clearly established when the prosecution must disclose material exculpatory and impeachment evidence to the defense. When the trial court denied the motion for a mistrial, he gave the defense the opportunity to review the report overnight and to recall the detective to the witness stand. Ex. 25, at 99-100 (#17). The court also left open the possibility of calling the person who created the report to the witness stand. Id. at 100-01 (#17). The Nevada Supreme Court could have concluded that there was no unconstitutional suppression of the report under these circumstances. Regarding the third element, prejudice, petitioner argues:

> M.B. was also described as "doing advanced work in preschool" and "ahead" intellectually. Ex. 48. These factors were relevant to a defense of consent, which is an element of the offense of sexual assault in Nevada. Nev. Rev. Stat. 200.364 and 200.366. Indeed, Mr. Morse's defense was that M.B. initiated the contact between herself and Mr. Morse. Ex. 29, p. 28-33.

First Amended Petition, at 17 (#14). Petitioner's defense was not simply that the victim initiated the contact; his defense was that he did not know what to do, and thus acted unwisely but without criminal intent, when the victim initiated the contact. Petitioner had the report in his possession for a night before giving his argument to the jury. He could have worked into the argument that the victim was advanced for her age, but he did not. The Nevada Supreme Court reasonably could have concluded that petitioner suffered no prejudice because he had enough time to change his argument. In all likelihood, a jury would not have accepted an argument that a three-year-old understood the nature of her conduct, and thus petitioner was not guilty of sexual assault, because she was advanced for her age. See Nev. Rev. Stat. § 200.366(1).

Reasonable jurists might find this conclusion to be debatable, and the court will grant a certificate of appealability on ground 4.

1  IT IS THEREFORE ORDERED that the first amended petition for writ of habeas corpus (#14) is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the court's determinations that grounds 1, 3, and 4 are without merit.

DATED: March 10, 2015.

                                                                                /s/ Howard D. McKibben
                                                                             HOWARD D. MCKIBBEN
                                                                             United States District Judge